## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**KIRK WILLIAMS**                              **CIVIL ACTION**

**VERSUS**                                     **NO.  14-2693**

**ROBERT TANNER, CCE, WARDEN,**                **SECTION "R"(4)**
**CRIMINAL DISTRICT COURT**

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Factual and Procedural Background

The petitioner, Kirk Williams ("Williams"), is a convicted inmate currently incarcerated in the B.B. "Sixty" Rayburn Correctional Center in Angie, Louisiana.[2]  On August 16, 2007, Williams was indicted by an Orleans Parish Grand Jury for the second degree murder of Travain Coates.[3]

The record reflects that, on the night of July 1, 2007, Williams, Coates and Jeffrey Shaw, who had been friends since childhood, planned to celebrate Coates's twenty-sixth birthday.[4]  Earlier

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 3.

[3]St. Rec. Vol. 1 of 8, Indictment, 8/16/07.

[4]The facts were taken from the unpublished opinion of the Louisiana Fourth Circuit Court of Appeal.  *State v. Williams*, 46 So.3d 289 (La. App. 4th Cir. 2010) (Table); *State v. Williams*, No. 2009-KA-1726, 2010 WL 8972152, at *1-*5 (La. App. 4th Cir. 2010); St. Rec. Vol. 7 of 8, 4th Cir. Opinion, 2009-KA-1726, pp. 1-10, 8/10/11.

in the day, Shaw and Williams were together and had smoked marijuana and each taken one ecstasy pill. Shaw later picked up Coates in his father's car around 8:30 p.m. in Avondale where they all lived. The two men then purchased and drank a half pint of Hennessy brandy before picking up Williams. Williams had two marijuana-laced cigars with him. The three men then picked-up two more friends, Alex Allen and J.D. Garner. Shaw, Coates and Williams smoked some marijuana while they waited for Allen to get dressed. Allen had a ten pack of ecstasy and took one pill before leaving the house.

When the men left Allen's house, they purchased more Hennessy brandy to drink. They eventually returned to Allen's house to hang out. Garner and Allen later left in one car to go to the Hookah Bar in New Orleans. Shaw, Williams and Coates also left to go to the House of Blues in New Orleans. On the way into the city, Coates and Williams smoked the two marijuana-laced cigars. Williams decided that he did not want to go to the House of Blues and instead wanted to go see his children. Shaw agreed to take him but first stopped to purchase cigarettes. When he returned to the car, Coates had moved into the driver's seat, and Williams was seated in the back seat on the passenger side. Shaw got into the front passenger seat and they drove away.

As Coates drove to the 1500 block of North Johnson Street where Williams's children lived, Shaw heard him say, "You can't stop destiny." He then saw Williams pointing a gun at Coates. Shaw said, "No, Kirk," and then saw a flash of light in the car and realized that Williams shot Coates. Shaw was able to stop the car by shifting it into park. Williams fled the area on foot. Shaw went around the car to the driver's side to see if Coates was alive. He then ran to the house where he believed Williams's girlfriend and children lived to call 911 and his father.

Several hours after the shooting, the police officers learned that Williams had been taken to Touro Hospital by his brother, Trazi Johnson, because of his apparently impaired condition. Officer Winston Harbin and Detective Regina Williams were able to interview Williams on the night of the shooting after reading him his rights and obtaining a written waiver. Williams was crying when he was first interviewed and later during his recorded statement. Williams could not recall what happened after he asked to be taken home except that he heard voices in his head telling him to shoot.

Williams was tried before a jury on May 13 through 15, 2009, and was found guilty of the lesser included offense of manslaughter.[5] At a hearing held on July 7, 2009, the Trial Court denied Williams's motion for a new trial.[6] The Trial Court sentenced Williams that same day to serve twenty-seven (27) years in prison at hard labor without benefit of parole, probation, or suspension of sentence.[7] The Trial Court also denied the motion to reconsider the sentence on September 1, 2009.[8]

On direct appeal to the Louisiana Fourth Circuit Court of Appeal, Williams's appointed counsel asserted three errors:[9] (1) the Trial Court erred in instructing the jury on the predicate offense applicable to one of the definitions of manslaughter and in denying the motion for new trial based on that error; (2) the evidence was insufficient to support the verdict; and (3) the Trial Court

---

[5]St. Rec. Vol. 1 of 8, Trial Minutes, 5/13/09; Trial Minutes, 5/14/09; Trial Minutes, 5/15/09; St. Rec. Vol. 7 of 8, Trial Transcript, 5/14-15/09.

[6]St. Rec. Vol. 1 of 8, Sentencing Minutes, 7/7/09; Motion for New Trial, 7/7/09; St. Rec. Vol. 7 of 8, Sentencing Transcript, 7/7/09.

[7]*Id.*

[8]St. Rec. Vol. 7 of 8, Motion Hearing Minutes, 9/1/09; Motion to Reconsider Sentence, 8/3/09.

[9]St. Rec. Vol. 5 of 7, Appeal Brief, 2011-KA-0187, 4/11/11.

erred in denying the motion to reconsider the excessive sentence.  On September 15, 2010, the Louisiana Fourth Circuit affirmed Williams's conviction and vacated the sentence.[10]  While the Circuit Court  found no merit in the claims raised by Williams, on its errors patent review, the Circuit Court determined that Williams had not waived the delay for sentencing following the denial of his motion for new trial.  Based on this, the Circuit Court vacated the sentence and remanded the matter for resentencing.

Thereafter, on January 14, 2011, the Trial Court resentenced Williams to serve twenty-seven (27) years in prison at hard labor without benefit of parole, probation, or suspension of sentence.[11]

On October 26, 2011, Williams filed an application for post-conviction relief with the Trial Court alleging that he received ineffective assistance from trial counsel.[12]  He argued that counsel erred when he failed to enter an initial plea of not guilty and not guilty by reason of insanity which precluded the appointment of a sanity commission and denied the Trial Court authority to charge the jury on Williams's mental condition at the time of the crime, which in turn left no substantive support for the substance-induced defense.  In addition, Williams argues that his counsel failed to adequately cross-examine Shaw about the discrepancies and lies in his testimony at trial regarding the men's use of ecstasy on the day and night of the shooting.

After receiving a response from the State, the Trial Court denied the application as meritless on October 9, 2013.[13]  The Louisiana Fourth Circuit denied Williams's related writ application on

---

[10]*Williams*, 46 So.3d at 289; *Williams*, 2010 WL 8972152, at *6; St. Rec. Vol. 7 of 8, 4th Cir. Opinion, 2009-KA-1726, pp. 10-11, 8/10/11.

[11]St. Rec. Vol. 1 of 8, Sentencing Minutes, 1/14/11.

[12]St. Rec. Vol. 8 of 8, Application for Post-Conviction Relief, 10/26/11.

[13]St. Rec. Vol. 1 of 8, Trial Court Order, 10/9/13; Minute Entry, 10/11/13; State's Response, 7/15/13.

December 20, 2013, finding no error in the Trial Court's ruling.[14]  The Louisiana Supreme Court also denied Williams's writ application without stated reasons on September 19, 2014.[15]

      In the meantime on June 18, 2014, Williams submitted a Motion to Correct an Illegal Sentence to the Trial Court arguing that he should not have been sentenced to a term without benefit of parole.[16]  The Trial Court granted the motion on March 18, 2015, and resentenced Williams on March 31, 2015, to an amended sentence of twenty-seven (27) years in prison at hard labor without restrictions on parole eligibility.[17]  The Court denied Williams's oral motion to reconsider the sentence and appointed counsel for purposes of appeal.

## II.     **Federal Petition**

      On December 12, 2014, the Clerk of this Court filed Williams's petition for federal habeas corpus relief in which he argues that his counsel provided ineffective assistance where he (a) failed to enter a plea of not guilty and not guilty by reason of insanity so that he could argue that petitioner should be excused from criminal liability because he was insane at the time of the offense instead of relying on an intoxication defense; and (b) failed to move for a sanity commission to determine petitioner's competence to stand trial or his mental state at the time of the offense.[18]

---

[14]St. Rec. Vol. 8 of 8, 4th Cir. Order, 2013-K-1661, 12/20/13; 4th Cir. Writ Application, 2013-K-1661, 12/16/13.

[15]*State v. Williams*, 148 So.3d 948 (La. 2014); St. Rec. Vol. 8 of 8, La. S. Ct. Order, 2014-KH-0104, 9/19/14; La. S. Ct. Writ Application, 14-KH-104, 1/14/14 (dated 1/9/14).

[16]St. Rec. Vol. 1 of 8, Docket Entry, 3/18/15.

[17]St. Rec. Vol. 1 of 8, Docket Entry, 3/31/15.

[18]Rec. Doc. No. 3, pp. 5-6.

Under a broad reading, Williams also asserts the following additional arguments and legal theories in his supporting memorandum:[19] (1) counsel was ineffective when he erred by providing oral and written notice of his intent to introduce testimony relating to the petitioner's intoxication rather than his mental condition which encouraged the State to file its successful motion in limine to limit the psychiatrist's testimony; (2) the State erred in its conclusion that intoxication was not a mental disease or defect; (3) the Trial Court erred by failing to prohibit the prosecution's use of known perjured testimony from Shaw and counsel was ineffective for failing to impeach or object to the perjured testimony; (4)(a) he was denied due process where the determination of his sanity was based on examination by defense psychiatrists which prevented the defense from offering contrary medical evidence and explaining inadequacies in the Dr. Deland's examination, and (b) the Trial Court erred in failing to take judicial notice of Williams's competency at the time of the incident and whether he was competent to assist counsel; (5) counsel was ineffective during the guilty plea process; (6) counsel provided ineffective assistance when he chose to rely on insufficient forensic psychiatry evidence to present the substance-induced defense; (7) his trial was fundamentally unfair where his sanity at the time of the offense was a significant factor and he did not waive the defense based on his competence; (8) counsel erred when he failed to urge that Williams's competency was an issue, failed to demand a sanity commission be appointed, and failed to elicit witness testimony about his sanity at the time; (9) the State's motion in limine should have been denied based on the defense of Williams's legal capacity; and (10) counsel was ineffective when he failed to point out discrepancies in Shaw's testimony at trial as being inconsistent with his grand jury testimony.

---

[19]Rec. Doc. No. 2, pp. 14-26.

Williams also urges the Court to grant him an evidentiary hearing on the following issues or to obtain the following information:[20] (a) whether counsel's decision to present a substance-induced defense denied him of a fair trial and resulted in a conviction; (b) whether Shaw's self-serving testimony during the grand jury hearing was altered at trial; (c) the testimony of witnesses who observed the chain of events and who came in contact with him at his mother's house; (d) whether Dr. Sarah Deland's testimony changed during cross-examination related to the exclusion of Williams's competency at the time of the incident; (e) whether counsel failed to explore petitioner's competency at the time of the offense which included suffering from a mental disorder; and (f) whether counsel failed to seek a competency hearing to aggressively corroborate testimony that petitioner heard voices and acted upon what he heard and counsel should have moved to enter a plea of not guilty and not guilty by reason of insanity.

The State filed an answer in opposition to Williams's petition in which it conceded the timely filing of the petition and argued that Williams "sole" claim of ineffective assistance of counsel was meritless.[21]  The State also urged that Williams is not entitled to an evidentiary hearing.

Williams filed a reply to the State's opposition urging that his counsel erred in failing to enter the not guilty and not guilty by reason of insanity defense limiting the defense's ability to bring additional evidence that Williams was not in his right mind at the time of the shooting and in failing to properly cross-examine Shaw on his contradictory testimony at trial and before the grand jury.[22]

---

[20]Rec. Doc. No. 3, pp. 10-13.

[21]Rec. Doc. No. 16.

[22]Rec. Doc. No. 17.

III.    **General Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[23] applies to this petition, which is deemed filed by petitioner in this court under the federal mailbox rule on November 7, 2014.[24]

The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default." *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)). As indicated above, the State concedes and the record demonstrates that Williams's federal petition was timely filed.

The State did not specifically address the exhaustion of state court remedies, although it recognized that failure to exhaust would be "fatal" to review of the claim.[25] The State also failed to recognize that Williams has urged numerous claims beyond the "sole claim" of ineffective assistance of counsel for failure to raise the insanity defense and failure to adequately cross-examine Shaw. Affording Williams's petition and supporting memorandum the broadest reading, as this

---

[23]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[24]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The Clerk of this Court filed Williams's federal habeas petition on December 12, 2014, when pauper status was granted following correction by petitioner of certain deficiencies. Williams's dated the original petition on November 7, 2014, which is the earliest date appearing in the record on which he could have delivered the pleadings to prison officials for mailing to the Court.

[25]Rec. Doc. No. 16, p. 14.

8

Court must do, Williams has urged numerous additional arguments and legal theories, including other claims of ineffective assistance of counsel, state trial court error, and prosecutorial error or misconduct, as outlined by the Court previously. The Court therefore finds for the following reasons that Williams has not exhausted state court remedies as to all of the claims and arguments raised in the petition and memorandum and his petition can be dismissed for that reason.

## IV.   <u>Request for Evidentiary Hearing</u>

Before proceeding to the exhaustion issue, the Court finds that Williams is not entitled to a federal evidentiary hearing. As discussed by the Supreme Court in *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1400-01 (2011), the decision to hold an evidentiary hearing is a statutorily mandated determination limited by the provisions of § 2254(e)(2). The statute restricts evidentiary hearings to those instances in which the claim relies on a new rule of law retroactively applied on collateral review for which the predicate could not have been previously discovered with due diligence and the facts would be sufficient to undermine a guilty verdict by clear and convincing evidence. The *Cullen* Court recognized that when these requirements are not met, evidence presented for the first time may not be considered on federal habeas review to address the merits of the claims under § 2254(d)(1). *Id.*

This Court, therefore, is limited to review of the evidence and record that was before the state courts that reviewed the merits of the claim at issue. *Cullen*, 131 S. Ct. at 1400; *Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011); *Gallow v. Cooper*, 505 F. App'x 285, 295-96 (5th Cir. 2012); *Thomas v. Thaler*, No. 12-50280, 2013 WL 1297269, at *4-*5 (5th Cir. Apr. 2, 2013). In this case, Williams has not based his claims on a new, retroactive rule of law under the provisions of § 2254(e)(2). He has made no showing of entitlement to relief from his conviction by clear and convincing evidence

undermining his guilt, especially considering his failure to exhaust as a prerequisite to this Court's review. There is no basis for this Court to grant an evidentiary hearing.

## V.    **Exhaustion Doctrine**

As mentioned above, the State did not acknowledge that Williams has presented more than one claim and did not specifically address the exhaustion requirement. The Court therefore places Williams on notice that it is raising *sua sponte* the failure to exhaust. *Accord Kurtzemann v. Quarterman*, 306 F. App'x 205, 206 (5th Cir. 2009) (citing *Day v. McDonough*, 547 U.S. 198, 209-10 (2006) (addressing limitations) and *Magouirk v. Phillips*, 144 F.3d 348, 358 (5th Cir. 1998) (addressing exhaustion)) (finding that the district court may *sua sponte* raise failure to exhaust, and notice of and an opportunity to respond to the exhaustion issue must be given); *see also* 28 U.S.C. § 2254(b)(3) (the State's failure to raise exhaustion is not a waiver of the defense).

Accordingly, **petitioner is hereby specifically advised and instructed that this report and recommendation is notice to him that this Court is *sua sponte* raising the issue of exhaustion as to this claim and that petitioner must submit any evidence or argument concerning the default as part of any objections he may file to this report.** *Magouirk*, 144 F.3d at 350, 360.

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *Nobles*, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 519-20).

The well-established test for exhaustion requires that the substance of the federal habeas claim be fairly presented to the highest state court. *Whitehead*, 157 F.3d at 387 (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." *Whitehead*, 157 F.3d at 387 (citing *Nobles*, 127 F.3d at 420); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001). When ineffective assistance of counsel is raised, the claim is not exhausted if the petitioner did not raise or mention the same basis or legal theory in the state court proceedings that is asserted in a federal petition. *See Ogan v. Cockrell*, 297 F.3d 349, 358 (5th Cir. 2002) ("Because Ogan is now proceeding on a different theory than that advanced in the state habeas court, we find this ineffectiveness of habeas counsel claim to be unexhausted."); *Burns v. Estelle*, 695 F.2d 847, 849-50 (5th Cir. 1983) (concluding that the factual bases for ineffective assistance claim were not exhausted as "significantly different" from those raised in state court).

For exhaustion purposes, it also is not enough for a petitioner to have raised the claims in the lower state courts if the claims were not specifically presented to the state's highest court, and vice versa. *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). Furthermore, a petitioner does not fairly present

a claim to the state's highest court if that court must read beyond the petition or brief, such as a lower court opinion, to find a claim not otherwise specifically raised. *Id*. at 32.

Before addressing Williams's failure to exhaust, the Court is compelled to embellish on the peculiar procedural posture of Williams's state court proceedings. As it stands on the record before the Court, after filing his federal petition, Williams was recently resentenced by the state trial court and counsel was appointed for purposes of appeal. The record is not clear whether an appeal has been formally lodged or whether the new sentence has become final with the appeal period having passed under state law. Nevertheless, a dismissal for failure to exhaust would not prejudice Williams should he be inclined to pursue complete review of the claims found to be unexhausted.

The record is clear that Williams has exhausted state court review of his specific claims of ineffective assistance of counsel based on trial counsel's failure to enter a plea of not guilty and not guilty by reason of insanity to allow for a full insanity defense beyond intoxication; failure to move for a sanity commission to determine petitioner's competence to stand trial or his mental state at the time of the offense; and failure to properly cross-examine Shaw about his conflicted trial and grand jury testimony. However, the record also reflects that Williams has <u>not</u> exhausted state court review of eight of the additional claims and arguments raised in this federal petition for the first time.

A review of the state court pleadings through post-conviction review in the Louisiana Supreme Court reflects that Williams has <u>not</u> raised to any state court in a procedurally proper manner (or otherwise) on direct appeal or post-conviction review the following eight out of the ten additional arguments and legal theories set forth in his supporting memorandum:[26] (1) counsel was ineffective when he erred by providing oral and written notice of his intent to introduce testimony

---

[26] Two of the claims were repetitive of or incorporated in the exhausted ineffective assistance of counsel claims.

relating to the petitioner's intoxication rather than his mental condition which encouraged the State to file its successful motion in limine to limit the psychiatrist's testimony; (2) the State erred in its conclusion that intoxication was not a mental disease or defect; (3) the Trial Court erred by failing to prohibit the prosecution's use of known perjured testimony from Shaw and counsel was ineffective for failing to impeach or object to the perjured testimony; (4)(a) he was denied due process where the determination of his sanity was based on examination by defense psychiatrists which prevented the defense from offering contrary medical evidence and explaining inadequacies in the Dr. Deland's examination, and (b) the Trial Court erred in failing to take judicial notice of Williams's competency at the time of the incident and whether he was competent to assist counsel; (5) counsel provided ineffective assistance when he chose to rely on insufficient forensic psychiatry evidence to present the substance-induced defense; (6) his trial was fundamentally unfair where his sanity at the time of the offense was a significant factor and he did not waive the defense based on his competence; (7) counsel erred when he failed to elicit witness testimony about his sanity at the time of the offense; and (8) the State's motion in limine should have been denied based on the defense of Williams's legal capacity.

Williams has therefore presented this Court with a "mixed petition," which includes both exhausted and unexhausted claims and arguments, and it is subject to dismissal for that reason. *See Whitehead*, 157 F.3d at 387 (citing *Nobles*, 127 F.3d at 420). The record discloses no good cause for Williams's failure to properly and fully exhaust his claims in the state courts, and the Court can find none from its review of the record. *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005). The

petition, therefore, should be dismissed.[27]  *Id*. at 277-78 (finding dismissal is appropriate where no good cause is shown for the failure to exhaust).  Having found no good cause for his failure to exhaust, this mixed petition should be dismissed without prejudice to allow Williams to fully exhaust available state court remedies as to all of his claims, unless he amends the petition to dismiss or exclude the unexhausted claims and proceed with only the exhausted claims.  *Pliler v. Ford*, 542 U.S. 225, 233 (2004) (citing *Rose*, 455 U.S. at 510).

## VI.   Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Williams's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

---

[27]Williams also would not be entitled to a stay of these proceedings, should one be requested, where there has been no showing of good cause to provide that extraordinary relief.  The Supreme Court has held that stay-and-abeyance is an extraordinary remedy not to be made readily available to a habeas petitioner.  *Rhines*, 544 U.S. at 278.  The *Rhines* Court cautioned that a stay-and-abeyance "should be available only in limited circumstances," (emphasis added), and is appropriate only when the court determines that there was "good cause" for the failure to exhaust.  *Id.* at 277; *see also Pliler v. Ford*, 542 U.S. 225, 233 (2004).  There is no such showing here.

court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[28]

New Orleans, Louisiana, this 25th day of June, 2015.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[28]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

15