# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**KIRK WILLIAMS**                                                **CIVIL ACTION**

**VERSUS**                                                       **NO. 14-2693**

**ROBERT TANNER, CCE, WARDEN**                                   **SECTION "R"(4)**
**CRIMINAL DISTRICT COURT**

## REPORT AND RECOMMENDATION

The petitioner, Kirk Williams ("Williams") filed an Amended Petition (Rec. Doc. No. 25) pursuant to the District Judge's prior Order (Rec. Doc. No. 24) to assert only claims raised in his original petition for which review was exhausted in the state courts. The matter as amended was referred (Rec. Doc. No. 28) to this United States Magistrate Judge for further proceedings and issuance of a Report and Recommendation on the remaining claims. *See* 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2).[1]

## I.       Factual and Procedural Background[2]

Williams is a convicted inmate currently incarcerated in the Louisiana State Police Barracks in Zachary, Louisiana.[3] On August 16, 2007, Williams was indicted by an Orleans Parish

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Williams's state criminal proceedings were outlined in the Court's prior Report (Rec. Doc. No. 22) and are repeated here in full and supplemented as necessary.

[3] Rec. Doc. No. 37.

Grand Jury for the second degree murder of Travain Coates.[4]  He entered a plea of not guilty on August 21, 2007.[5]

The record reflects that, on the night of July 1, 2007, Williams, Coates, and Jeffrey Shaw, who had been friends since childhood, planned to celebrate Coates's twenty-sixth birthday.[6] Earlier in the day, Shaw and Williams were together and had smoked marijuana and each taken one ecstasy pill.  Shaw later picked up Coates in his father's car around 8:30 p.m. in Avondale, Louisiana where they all lived.  The two men then purchased and drank a half pint of Hennessy brandy before picking up Williams.  Williams had two marijuana-laced cigars with him.  The three men then picked-up two more friends, Alex Allen and J.D. Garner.  Shaw, Coates, and Williams smoked some marijuana while they waited for Allen to get dressed.  Allen had a ten pack of ecstasy and took one pill before leaving the house.

The men left and purchased more Hennessy brandy to drink at a nearby store.  They then returned to Allen's house to hang out.  Garner and Allen eventually left in one car to go to the Hookah Bar in New Orleans.  Shaw, Williams, and Coates also left to go to the House of Blues in New Orleans.  On the way into the city, Coates and Williams smoked the two marijuana-laced cigars.  Williams decided that he did not want to go to the House of Blues and instead wanted to go see his children.  Shaw agreed to take him but first stopped to purchase cigarettes.  When he

---

[4]St. Rec. Vol. 1 of 8, Indictment, 8/16/07.

[5]St. Rec. Vol. 1 of 8, Docket Entry, 8/21/07.

[6]The facts were taken from the unpublished opinion of the Louisiana Fourth Circuit Court of Appeal.  *State v. Williams*, 46 So.3d 289 (La. App. 4th Cir. 2010) (Table); *State v. Williams*, No. 2009-KA-1726, 2010 WL 8972152, at *1-*5 (La. App. 4th Cir. 2010); St. Rec. Vol. 7 of 8, 4th Cir. Opinion, 2009-KA-1726, pp. 1-10, 8/10/11.

returned to the car, Coates had moved into the driver's seat, and Williams was seated in the back seat on the passenger side.  Shaw got into the front passenger seat, and they drove away.

As Coates drove to the 1500 block of North Johnson Street where Williams's children lived, Shaw heard him say, "You can't stop destiny."  He then saw that Williams was pointing a gun at Coates.  Shaw said, "No, Kirk," and then saw a flash of light in the car and realized that Williams shot Coates.  Shaw was able to stop the car by shifting it into park.  Williams got out and fled the area on foot.  Shaw went around the car to the driver's side to see if Coates was alive.  He then ran to the house where he believed Williams's girlfriend and children lived to call 911 and his father.

Several hours after the shooting, the police officers learned that Williams had been taken to Touro Hospital by his brother, Trazi Johnson, because of his apparently impaired condition. Officer Winston Harbin and Detective Regina Williams were able to interview Williams on the night of the shooting after reading him his rights and obtaining a written waiver.  Williams was crying when he was first interviewed and later during his recorded statement.  Williams could not recall what happened after he asked to be taken home, except that he heard voices in his head telling him to shoot.

Williams was tried before a jury on May 13 through 15, 2009, and was found guilty of the lesser included offense of manslaughter.[7]  At a hearing held on July 7, 2009, the Trial Court denied Williams's motion for a new trial and sentenced him to serve twenty-seven (27) years in prison at

---

[7]St. Rec. Vol. 1 of 8, Trial Minutes, 5/13/09; Trial Minutes, 5/14/09; Trial Minutes, 5/15/09; St. Rec. Vol. 7 of 8, Trial Transcript, 5/14-15/09.

hard labor without benefit of parole, probation, or suspension of sentence.[8]  The Court also denied the motion to reconsider the sentence on September 1, 2009.[9]

On direct appeal to the Louisiana Fourth Circuit Court of Appeal, Williams's appointed counsel asserted three errors:[10] (1) the Trial Court erred in instructing the jury on the predicate offense applicable to one of the definitions of manslaughter and in denying the motion for new trial based on that error; (2) the evidence was insufficient to support the verdict; and (3) the Trial Court erred in denying the motion to reconsider the excessive sentence.  On September 15, 2010, the Louisiana Fourth Circuit affirmed Williams's conviction but vacated the sentence.[11]  While the Court found no merit in the claims raised by Williams, on its errors patent review, the Court determined that Williams had not waived the delay for sentencing following the denial of his motion for new trial.  Based on this, the Court vacated the sentence and remanded the matter for resentencing.  The Trial Court resentenced Williams on January 14, 2011, to serve twenty-seven (27) years in prison at hard labor without benefit of parole, probation, or suspension of sentence.[12]

On October 26, 2011, Williams filed an application for post-conviction relief with the Trial Court alleging that he received ineffective assistance from trial counsel for failure to enter an initial plea of not guilty and not guilty by reason of insanity.[13]  As a result, Williams argued, this

---

[8]St. Rec. Vol. 1 of 8, Sentencing Minutes, 7/7/09; Motion for New Trial, 7/7/09; St. Rec. Vol. 7 of 8, Sentencing Transcript, 7/7/09.

[9]St. Rec. Vol. 7 of 8, Motion Hearing Minutes, 9/1/09; Motion to Reconsider Sentence, 8/3/09.

[10]St. Rec. Vol. 7 of 8, Appeal Brief, 2009-KA-1726, 4/11/11.

[11]*Williams*, 46 So.3d at 289; *Williams*, 2010 WL 8972152, at *6; St. Rec. Vol. 7 of 8, 4th Cir. Opinion, 2009-KA-1726, pp. 10-11, 8/10/11.

[12]St. Rec. Vol. 1 of 8, Sentencing Minutes, 1/14/11.

[13]St. Rec. Vol. 8 of 8, Application for Post-Conviction Relief, 10/26/11.

precluded the appointment of a sanity commission and denied the Trial Court authority to charge the jury on Williams's mental condition at the time of the crime, which also left no support for the defense that his actions were induced by substance abuse. In addition, Williams argued that his counsel failed to adequately cross-examine Shaw about the discrepancies and lies in his trial testimony regarding the men's use of ecstasy on the day and night of the shooting.

After receiving a response from the State, the Trial Court denied the application as meritless on October 9, 2013.[14] The Louisiana Fourth Circuit denied Williams's related writ application on December 20, 2013, finding no error in the Trial Court's ruling.[15] The Louisiana Supreme Court also denied Williams's writ application without stated reasons on September 19, 2014.[16]

In the meantime on June 18, 2014, Williams submitted a Motion to Correct an Illegal Sentence to the Trial Court arguing that he should not have been sentenced to a term without benefit of parole.[17] The Trial Court granted the motion on March 18, 2015, and resentenced Williams on March 31, 2015, to an amended sentence of twenty-seven (27) years in prison at hard labor without restrictions on parole eligibility.[18] The Court denied Williams's oral motion to

---

[14]St. Rec. Vol. 1 of 8, Trial Court Order, 10/9/13; Minute Entry, 10/11/13; State's Response, 7/15/13.

[15]St. Rec. Vol. 8 of 8, 4th Cir. Order, 2013-K-1661, 12/20/13; 4th Cir. Writ Application, 2013-K-1661, 12/16/13.

[16]*State v. Williams*, 148 So.3d 948 (La. 2014); St. Rec. Vol. 8 of 8, La. S. Ct. Order, 2014-KH-0104, 9/19/14; La. S. Ct. Writ Application, 14-KH-104, 1/14/14 (dated 1/9/14).

[17]St. Rec. Vol. 1 of 8, Docket Entry, 3/18/15.

[18]St. Rec. Vol. 1 of 8, Docket Entry, 3/31/15.

reconsider the sentence and appointed counsel for purposes of appeal, although no appeal was ever lodged after the resentencing.

## II.    <u>Federal Habeas Petition</u>

On June 25, 2015, the undersigned issued a Report and Recommendation (Rec. Doc. No. 22) recommending dismissal of Williams federal petition for failure to exhaust state court review of eight of the ten issues asserted in his original petition.  Based thereon, the District Court granted Williams leave to amend his petition to assert only the two exhausted claims.[19]  Williams amended his petition to assert and proceed with his two exhausted claims that he received ineffective assistance of counsel when his trial counsel: (1) failed to enter a plea of not guilty and not guilty by reason of insanity to allow for a full insanity defense beyond intoxication and failed to move for the appointment of a sanity commission to determine petitioner's competence to stand trial or his mental state at the time of the offense; and (2) failed to properly cross-examine Shaw about his conflicted trial and grand jury testimony.[20]  The matter was referred to the undersigned for further proceedings on February 9, 2017.[21]

On the Court's order, the State filed an updated response in opposition to Williams's amended petition in which it asserted that Williams is not entitled to federal habeas relief on the remaining claims because they are without merit under the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).[22]

---

[19]Rec. Doc. No. 24.

[20]Rec. Doc. No. 25.

[21]Rec. Doc. No. 28.

[22]Rec. Doc. No. 35.

Williams filed a reply to the State's opposition urging that his counsel's errors limited the defense's ability to bring evidence that he was not in his right mind at the time of the shooting.[23] He further argues that counsel's failure to properly cross-examine Shaw resulted in his conviction by insufficient evidence. Williams also asserts that he should be granted an evidentiary hearing to clarify the factual issues presented.

## III.   General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[24] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on November 7, 2014.[25] The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default." *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

---

[23]Rec. Doc. No. 36.

[24]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[25]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of this Court received Williams's original petition on November 24, 2014, and it was eventually filed on December 12, 2014, after correction of certain deficiencies. Williams dated his signature on the original pleadings on November 7, 2017, which is the earliest date appearing in the record on which he could have presented the pleadings to prison officials for mailing to a federal court.

The issue of Williams's failure to fully exhaust state court review has been addressed and remedied by the prior orders of this Court and Williams's amended petition. The State concedes and the record reflects that Williams's original petition as amended was timely filed and neither of the two remaining claims is in procedural default.

## IV.    <u>Request for Evidentiary Hearing</u>

Williams asserts that he is entitled to an evidentiary hearing to further develop the factual support for his claims. To the extent he suggests that the state courts should have provided him with an evidentiary hearing, the claim would not entitle him to federal habeas corpus review or relief. The law is well settled that "infirmities in State habeas proceedings do not constitute grounds for relief in federal court." *Rudd v. Johnson*, 256 F.3d 317, 319 (5th Cir. 2001). An attack on the state habeas proceeding is an attack on a proceeding collateral to the detention and not the detention itself, which is the issue to be addressed in federal habeas cases. *Id*., at 320; *Drevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999); *Lackawanna Cty. Dist. Attorney v. Coss*, 532 U.S. 394, 402-403 (2001) (no constitutional mandate that states provide post-conviction review) (citing *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987)).

In addition, Williams request for a federal evidentiary hearing in this Court on his ineffective assistance claims must be denied. As discussed by the Supreme Court in *Cullen v. Pinholster*, 563 U.S. 170, 185-86 (2011), the decision to hold an evidentiary hearing is a statutorily mandated determination limited by the provisions of § 2254(e)(2). The statute restricts evidentiary hearings to those instances where the claim relies on a new rule of law retroactively applied on collateral review for which the predicate could not have been previously discovered with due diligence and where the facts would be sufficient to undermine a guilty verdict by clear and convincing evidence. The *Cullen* Court recognized that where these requirements are not met,

evidence presented for the first time may not be considered on federal habeas review to address the merits of the claims under § 2254(d)(1). *Id.*

This Court, therefore, is limited to review of the evidence and record that was before the state courts which reviewed the merits of the type of claims at issue. *Cullen*, 563 U.S. at 185; *Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011); *Gallow v. Cooper*, 505 F. App'x 285, 295-96 (5th Cir. 2012); *Thomas v. Thaler*, No. 12-50280, 2013 WL 1297269, at *4-*5 (5th Cir. Apr. 2, 2013). In this case, Williams has not based his claims on a new, retroactive rule of law under the provisions of § 2254(e)(2). He has made no showing of entitlement to relief from his conviction by clear and convincing evidence undermining his guilt. For the reasons discussed below, he has failed to establish his entitlement to federal habeas relief. Therefore, there is no basis for this Court to grant an evidentiary hearing.[26]

## V.    Standards of a Merits Review

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

---

[26]For the benefit of a reviewing Court, the decision in *Martinez v. Ryan*, 566 U.S. 1 (2012), does not apply to consideration of whether Williams is entitled to an evidentiary hearing on his ineffective assistance of counsel claims. In *Martinez*, the Supreme Court held that a procedural bar imposed by a state court "'will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [State's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'" *Trevino v. Thaler*, 569 U.S. 413, 417, 133 S. Ct. 1911, 1914 (2013) (quoting *Martinez*, 566 U.S. at 17). Williams's ineffective assistance of counsel claims were not procedurally barred by the state courts. Instead, his claims were addressed and relief was denied on the merits under *Strickland*. "*Martinez* does not apply to claims that were fully adjudicated on the merits by the state habeas court because those claims are, by definition, not procedurally defaulted." *Escamilla v. Stephens*, 749 F.3d 380, 394 (5th Cir. 2014); *Villanueva v. Stephens*, 619 F. App'x 269, 276 (5th Cir. 2015); *see also Allen v. Stephens*, 619 F. App'x 280, 290 (5th Cir. 2015). For this same reason, "once a claim is considered and denied on the merits by the state habeas court, *Martinez* is inapplicable, and may not function as an exception to *Pinholster*'s rule that bars a federal habeas court from considering evidence not presented to the state habeas court." *Escamilla*, 749 F.3d at 395 (citations omitted). Furthermore, as shown in this report, Williams's has no substantial claim of ineffective assistance of counsel that would invoke any relief under *Martinez*.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA.  The standard provides that deference be given to the state court's decision unless the decision is "contrary to, or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.  The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *White*, 134 S. Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*,

210 F.3d at 485.  A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts.  *White*, 134 S. Ct. at 1706-07; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law.  *See Williams*, 529 U.S. at 410.  The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law.  *Id.*  "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'"  *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 698-99 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable."  *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002).  The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.  *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).  In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits.  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## VI.    Ineffective Assistance of Counsel

Williams alleges that his counsel was ineffective when he failed to enter a plea of guilty and not guilty by reason of insanity, which he claims would have allowed for a full insanity defense beyond his impairment by drugs.  He also claims that counsel was ineffective in failing to move

for a sanity commission to determine his competence to stand trial and at the time of the shooting. He also complains that counsel failed to properly cross-examine Jeffrey Shaw about his own drug use on the night of the murder when Shaw's trial testimony varied from his grand jury testimony.

Williams raised these arguments in his state application for post-conviction relief, which was denied by the state trial court under the *Strickland* standards and which held that Williams's counsel was effective in choosing a trial strategy and intoxication defense. This holding was tacitly followed by the Louisiana Fourth Circuit and Louisiana Supreme Court denials of relief without stated reasons. *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991).

A.    **The *Strickland* Standards**

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010). Thus, under the AEDPA, the question before this Court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The Supreme Court's holding in *Strickland*, 466 U.S. at 668, relied upon by the state courts, is the appropriate standard for judging the performance of counsel. In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *See Strickland*, 466 U.S. at 687. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992). In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos v. Scott*, 61 F.3d 337, 348 (5th Cir. 1995).

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689). "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 702 (citing *Strickland*, 466 U.S. at 689). As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v.*

13

*Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695).  In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Pinholster*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at. 694).  This standard requires a "substantial," not just "conceivable," likelihood of a different result.  *Harrington*, 562 U.S. at 112.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986).  Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief.  *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom."  *Harrington*, 562 U.S. at 105.  The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.*, at 105 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential."  *Pinholster*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009)).  The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland*

14

standard through the "deferential lens of § 2254(d)."  *Id.* (citing *Strickland*, 466 U.S. at 689, and quoting *Knowles*, 556 U.S. at 121 n.2).

### B.    Insanity Defense and Competency

Williams asserts that his counsel was ineffective for failing to pursue an insanity plea beyond the intoxication defense and an evaluation of his competency to proceed.  The decision by counsel whether to present an insanity defense is a matter of trial strategy.  *See McInerney v. Puckett*, 919 F.2d 350, 353 (5th Cir. 1990).  "A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." *Martinez v. Dretke*, 404 F.3d 878, 885 (5th Cir. 2005) (citations omitted).  In evaluating counsel's decision regarding an insanity defense, the courts are reminded that "the insanity defense involves case by case determinations of fact and will often fail even if raised and even where some indications of irrationality exist." *McInerney*, 919 F.2d at 353.

Thus, to establish ineffective assistance of counsel for failing to raise an insanity defense, or advise the client to enter a plea of not guilty and not guilty by reason of insanity, the petitioner must show that counsel had some real indication that a mental impairment was a viable defense to the crime charged.  *See Byrne v. Butler*, 845 F.2d 501, 513 (5th Cir. 1988); *Wilson v. Butler*, 813 F.2d 664, 671 (5th Cir. 1987).  It is not enough for a habeas petitioner simply to offer the speculative possibility of a successful insanity plea and defense.  *See Long v. Krenke*, 138 F.3d 1160, 1162 (7th Cir. 1998).

Under La. Rev. Stat. Ann. § 14:14, a criminal defendant's mental disease or defect which prevented his ability to distinguish right from wrong at the time of the crime, if proven, acts as an exemption from criminal responsibility, whether the crime be of specific or general intent.  La.

15

Rev. Stat. Ann. § 14:14; *State v. Scott*, 344 So.2d 1002, 1005 (La. 1977); *State v. Garner*, 890 So.2d 733, 735 (La. App. 2d Cir. 2004). However, a legal presumption exists that a defendant is sane and responsible for his actions at the time of an offense. La. Rev. Stat. Ann. § 15:432. To rebut that presumption and avoid criminal responsibility, the defendant has the burden of proving the affirmative defense of insanity by a preponderance of the evidence. La. Code Crim. P. art. 652; *Garner*, 890 So.2d at 735 (citing *State v. Silman*, 663 So.2d 27 (La. 1995) and *State v. Odom*, 760 So.2d 576 (La. App. 2d Cir. 2000)). Because of this heavy burden, counsel is not ineffective for failing to raise insanity as a defense where the facts and record do not reflect any indication or evidence that the defendant in fact had a mental disorder that rendered him insane as defined above. *Johnson v. Cain*, 548 F. App'x 260, 261 (5th Cir. 2013); *Byrne*, 845 F.2d at 513.

In Williams's case, the only admitted and viable impairment to his ability to distinguish right from wrong when he shot Coates was his voluntary consumption of alcohol and narcotics, a defense already before the jury pursuant to La. Rev. Stat. Ann. § 14:15. Williams did not present the state courts, nor this federal habeas court, with any support for his suggestion that his sanity should have been questioned or that he had a diagnosed mental issue, other than his intoxication, which would have been a viable defense. Under Louisiana law, the temporary effect of substance abuse does not constitute a mental disease or defect for purposes of the insanity defense under La. Rev. Stat. Ann. § 14:14. *State v. Williams*, 8 So.3d 548 (La. 2009) (citing *Scott*, 344 So.2d at 1002; *see also*, *Jones v. Butler*, 837 F.2d 691, 696 n.4 (5th Cir. 1988) (even if alcohol or drug abuse could result in a mental disease or defect, counsel's decision not to pursue such a defense is a proper strategic choice under *Strickland*). Without some indication that he suffered a true mental defect or illness, Williams has failed to establish that counsel acted unreasonably or prejudicially in proceeding to trial without pursuing an insanity plea or defense.

Similarly, Williams has also offered nothing to support his suggestion that counsel should have questioned whether he was competent to proceed to trial or assist with his defense. The well-settled constitutional standard for competency to proceed is whether a defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402 (1960); *Drope v. Missouri*, 420 U.S. 162 (1975); *Austin v. Davis*, 876 F.3d 757, 777-78 (5th Cir. 2017); *Lokos v. Capps*, 625 F.2d 1258, 1261 (5th Cir. 1980). It is a violation of due process to try and convict a defendant who lacks this level of mental competence. *Cooper v. Oklahoma*, 517 U.S. 348 (1996); *Pate v. Robinson*, 383 U.S. 375 (1966); *Carter v. Johnson*, 131 F.3d 452 (5th Cir. 1997).

Williams makes no supported argument that he did not understand the proceedings against him. The record contains nothing to suggest that Williams's counsel or the state trial court had a reasonable factual basis for requesting a competency examination by a sanity commission. Williams also does not deny that he was able to assist his counsel in preparing for or at trial. He, therefore, has established nothing to suggest that his counsel should have pursued a competency evaluation. "There can be no deficiency for failing to request a competency hearing where there is no evidence of incompetency." *McCoy v. Lynaugh*, 874 F.2d 954, 964 (5th Cir. 1989); *see also Lamb v. Johnson*, 179 F.3d 352, 259 (5th Cir. 1999) (allegations of a mere possibility of a different trial outcome are insufficient to establish prejudice under *Strickland*.).

Williams has failed to establish that the state courts denial of relief was contrary to or an unreasonable application of *Strickland*. He is not entitled to relief on this issue.

C.    __Cross-Examination of State's Witness__

Williams alleges that Jeffery Shaw's trial testimony about the events on the night of the shooting differed from his grand jury testimony, and his counsel failed adequately to cross-examine him on the discrepancies.  Specifically, Williams asserts that his counsel should have questioned Shaw about his testimony that he did not recall anyone using ecstasy on the night of the shooting and about the facts surrounding the marijuana laced cigars.  He also contends that other evidence and statements contradicted Shaw's trial testimony that he did not know there was a gun in the car prior to the shooting.  He further contends that his counsel also should have questioned Shaw about any offer of immunity from the State for his testimony since he too was consuming alcohol and narcotics on the day of the shooting.

A complete and thorough reading of the trial, motion to suppress hearing, and grand jury transcripts does not reflect inconsistencies in Shaw's testimony as described by Williams or any inconsistency of the type that reasonable counsel was required to have used to impeach Shaw at trial.  The minor discrepancies in Shaw's statements are not remarkable and are not related to the ecstasy use or the marijuana laced cigarettes.  As noted by the State, the most notable discrepancy was revealed by the state trial court in the phrasing of Williams's statement related to "destiny" just seconds before the shooting.[27]  No one, including Williams, took any further exception or challenge to the different phrasing referenced in the three proceedings and which was attributed to faulty transcription.

---

[27]St. Rec. Vol. 7 of 8, Trial Transcript, pp. 52-53, 5/14-15/09.

On the other hand, Shaw consistently testified at trial and before the grand jury that he did not see or know of anyone using ecstasy on the night of the shooting.[28]  Contrary to Williams's claims, his counsel challenged this testimony on cross-examination at trial and rigorously questioned Shaw about his claim that he did not use or know anyone who used ecstasy that night.[29]  His counsel also questioned Shaw about who provided the cigars and who provided the marijuana that were used prior to the shooting.[30]  Shaw, nevertheless, was consistent in each proceeding that Williams provided the marijuana and had two cigars, one behind each ear, when he arrived.[31]  When Williams's counsel attempted to create confusion on the point, Shaw testified that Allen had other cigars at the house in addition to those brought in by Williams.[32]

Williams's counsel also rigorously questioned Shaw about his claimed lack of knowledge about or the location of the gun used by Williams to shoot Coates.[33]  His trial testimony on this point was consistent with his grand jury testimony where he testified that he knew Williams's owned a gun but did not know it was with him in the car.[34]

---

[28]St. Rec. Vol. 7 of 8, Trial Transcript, pp. 40, 51-52, 67, 5/14-15/09; St. Rec. Vol. 2 of 8, Grand Jury Transcript, pp. 6, 7, 8/16/07.

[29]St. Rec. Vol. 7 of 8, Trial Transcript, pp. 51-52, 5/14-15/09.

[30]St. Rec. Vol. 7 of 8, Trial Transcript, pp. 39, 40, 55, 63, 5/14-15/09; St. Rec. Vol. 2 of 8, Grand Jury Transcript, p. 7, 8/16/07.

[31]St. Rec. Vol. 7 of 8, Trial Transcript, pp. 40, 51-52, 5/14-15/09; Motion Hearing Transcript, pp. 10-12, 5/16/08; St. Rec. Vol. 2 of 8, Grand Jury Transcript, pp. 6, 7, 8/16/07.

[32]St. Rec. Vol. 7 of 8, Trial Transcript, pp. 68-69, 5/14-15/09.

[33]St. Rec. Vol. 7 of 8, Trial Transcript, pp. 44-45, 64-65, 66, 67, 5/14-15/09.

[34]St. Rec. Vol. 2 of 8, Grand Jury Transcript, p. 5, 8/16/07.

Williams has not pointed to any unchallenged discrepancy in Shaw's testimony that was not addressed by counsel at trial.  There is nothing in the grand jury transcript that would have aided counsel in his cross-examination on these points.  Furthermore, there is nothing in the record that would have prompted Williams's counsel to question whether the State gave Shaw any leniency in return for his testimony.  In fact, Williams's counsel questioned Shaw's motivation for testifying based on his long friendship with the victim and any animosity he may have had towards Williams.[35]  Thus, Williams's counsel placed Shaw's motivation before the jury to weigh in assessing his credibility.

Williams has not demonstrated that his counsel was deficient in failing to pursue further cross-examination of Shaw or that the failure to do so was prejudicial to the defense.  "The decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential exercise of professional judgment."  *Ford v. Cockrell*, 315 F. Supp. 2d 831, 859 (W.D. Tex. 2004), *aff'd*, 135 F. App'x 769 (5th Cir. 2005).  The Supreme Court has cautioned courts not to second-guess counsel's decisions on such matters through the distorting lens of hindsight; rather, courts must employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy.  *Strickland*, 466 U.S. at 689.

Williams, therefore, has not established that the state courts' denial of relief on this issue was contrary to or an unreasonable application of federal law.  He is not entitled to relief on this claim.

---

[35]St. Rec. Vol. 7 of 8, Trial Transcript, p. 66-67, 5/14-15/09.

## VII.    <u>Recommendation</u>

For the foregoing reasons, it is **RECOMMENDED** that Kirk Williams's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[36]

New Orleans, Louisiana, this 22nd day of January, 2018.

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[36]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.